MAHON et al. v. GUARANTY TRUST & SAFE DEPOSIT CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1917.)

No. 2252.

1. COURTS ⬳317—JURISDICTION OF FEDERAL COURTS—ALIGNMENT OF PARTIES.
    In a suit by a mortgagee against the mortgagor and its employés to enjoin the latter from violating their contract of employment, in which no grounds for relief are stated and no relief is asked against the mortgagor, it should be aligned as a complainant for the purpose of determining the jurisdiction of a federal court.

2. INJUNCTION ⬳114(1)—INDISPENSABLE PARTIES—SUIT BASED ON CONTRACT.
    To a suit by a mortgagee based upon a contract of the mortgagor with its employés, the mortgagor is an indispensable party.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 202.]

Appeal from the District Court of the United States for the District of Indiana.

Suit in equity by the Guaranty Trust & Safe Deposit Company against the Indianapolis Traction & Terminal Company and others. From an order granting a preliminary injunction, defendants William D. Mahon and others appeal. Reversed.

Appellants appeal from an order of the District Court granting a preliminary injunction restraining them from violating or causing others to violate a certain contract governing the conditions of employment of a large number of men operating the street railway lines of the defendant the Indianapolis Traction & Terminal Company, and also restraining the employés of the traction company from going on a strike or quitting in a body in violation of the express provisions of that agreement.

Appellee, a citizen of Pennsylvania, is the trustee named in a certain mortgage given by the defendant the Indianapolis Traction & Terminal Company, a citizen of Indiana, hereinafter referred to as the traction company, to secure the payment of a loan of $5,000,000. The traction company owns certain franchises, real estate, and street car lines, and leases another line from the Indianapolis Street Railway Company, all of which it operates in the city of Indianapolis. A large number of the other defendants are its employés, while other defendants are officers and representatives of labor unions. None of these defendants are citizens of Pennsylvania, nearly all of them being citizens of Indiana.

In October, 1913, the employés of the traction company went out on a strike which continued until November, 1913, when an agreement was reached; some of the more important features being: That the employés should return to their work without prejudice and with full seniority rights recognized; that all grievances as to wages and conditions should be presented by the employés to the company and unless satisfactorily adjusted should be referred to the Public Service Commission for the State of Indiana for final determination, the award of said commission to be binding upon all parties for

a period of three years; that the agreement thus to arbitrate was not only to be signed by the traction company and by a committee of the employés, but also by the Governor of the State of Indiana and an official representative of the United States government.

Pursuant to the agreement to arbitrate, the men returned to their work and the Public Service Commission of Indiana filed its award in February, 1914. It consisted of 19 findings and covered questions of wages as well as hours and conditions of work. It also provided for a permanent court of arbitration to hear complaints during the life of the award, to wit, during the three years covered by the agreement.

While most of the findings of the commissioners were acceptable to and accepted by the parties to the agreement without question, there were certain provisions which the traction company contended were both impracticable and unreasonable, and individual employés were induced to sign agreements differing somewhat from those provided in the award as to hours of employment. The traction company claimed these agreements to be in harmony with the award and in no way imposing hardships upon the employés. This claim was disputed by certain of defendants.

Appellee alleges that the officers of the union known as the Amalgamated Association of Street and Electrical Employés of America desired to force the so-called "closed shop" on the traction company and were threatening to call a strike and to cause the traction company's employés to break their contract with the company and to violate the provisions of the award, and that the officers and certain employés conspired together to force upon the traction company the adoption of the so-called "closed shop" and to violate the contract hereinbefore referred to, and the bill particularly alleged that as a part of the conspiracy the defendants secured shares of the stock of the Indianapolis Street Railway Company and brought the suit in the state court of Indiana for the avowed purpose of securing the cancellation of the lease between the Indianapolis Street Railway Company and the Indianapolis Traction & Terminal Company but for the real purpose of securing the appointment of a receiver during the pendency of a strike upon the ostensible ground that such traction company failed to operate its cars and therefore forfeited its lease. Appropriate allegations of resulting damage to plaintiff's security also appeared.

Various defendants answered separately, while a larger group answered jointly and severally. While many of the allegations in the bill were disputed, defendants' chief defense was that the traction company constantly violated the award made pursuant to the agreement referred to in the complaint and charged that it was the common practice of the traction company to take individual employés into its office and coerce such employé to sign an agreement, in terms differing from the conditions fixed by the award; that thereby the traction company operated its working schedule contrary to the provisions of the award. It is unnecessary to give a more detailed statement of the various issues raised in the District Court in view of our conclusion on the question of jurisdiction. These issues, without further details, are stated only because they bear upon this question of jurisdiction.

The prayer for relief in the bill was as follows:

"Wherefore plaintiff prays * * * that upon the final hearing of this cause, the defendants and each of them and all persons associated or connected with them in the combination and conspiracy aforesaid, or who are parties to said award, or who are parties to said agreement, and all officers, agents, employés or other persons acting in the interest of any of said defendants or associations be perpetually enjoined and restrained from calling or enforcing a strike of the employés or any of them of the defendant the Indianapolis Traction & Terminal Company, engaged in the operation of its system of street railroads in the city of Indianapolis, or by threats or other intimidation or violence or by the advice, solicitation, influence or pressure of the various organizations to which they belong, the same being the labor unions or associations located in the city of Indianapolis or any other organizations or associations outside of the employés of the defendant Indianapolis Traction & Terminal Company, to strike or desist by other concert action from their

service as employés of the defendant the Indianapolis Traction & Terminal Company, in violation of said award, or in violation of said agreement, or from preventing by threats or violence other persons from entering the service of the defendant the Indianapolis Traction & Terminal Company, in the operation of its said system, or by such means inducing or compelling any of the employés now or hereafter in the service of said company to become members of said Amalgamated Association against their wills or without their free consent, or by such means compelling the defendant Indianapolis Traction & Terminal Company, to operate its system of street railroads by union labor exclusively, or from injuring or destroying any of the property of the said defendant Indianapolis Traction & Terminal Company, or from interrupting said defendant in the operation of its said system of street railroads in the city of Indianapolis, or by persuasion, threats or any other means whatever procuring or influencing any of the employés of said defendant Indianapolis Traction & Terminal Company, who are parties to said agreement mentioned in the eighth section of this bill of complaint, to go upon a strike or to suspend the operation of said defendant's property, or from interfering with or in any other way interrupting any other employé of said defendant traction company in the performance of the duties of his employment to said company, or otherwise interrupting the said defendant's service upon its road, or in any other way or manner violating the terms of said award or the terms of said agreement. And that the said defendants and all persons associated or connected with them in the said combination or conspiracy aforesaid be perpetually enjoined and restrained from the further prosecution of the said action brought in the name of said Dobson in the Marion circuit court, or from harassing and embarrassing said Indianapolis Traction & Terminal Company by pressing for a receiver on the pretended ground that it is violating its said lease or its said franchise by failing to operate its said property by reason of said strike, or otherwise from obtaining or seeking to obtain any legal or technical advantage in law from the interruption of said company's service and be caused by the said strike or by any other act or connivance, conspiracy or combination caused, produced or concurred in by the said defendants, and that there be issued out of this court immediately a restraining order, whereby the defendants and each of them and all persons associated or connected with them be restrained from doing or assisting in the doing of any of the acts or things which are above prayed to be perpetually enjoined, until there can be a hearing upon a motion for a temporary injunction, and that a time be fixed for the hearing of a motion for a temporary injunction, and the defendants notified thereof, and that upon such hearing a temporary injunction be granted, enjoining and restraining the defendants and each of them and their agents and all persons associated or connected with them or any of them from doing any of the acts and things herein prayed to be perpetually enjoined until the final hearing of this cause or until the further order of this court, and the plaintiff asks all other proper relief."

Elias D. Salsbury, of Indianapolis, Ind., for appellants.
Wm. H. Latta, of Indianapolis, Ind., for appellee.

Before KOHLSAAT, MACK, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1] The question of the court's jurisdiction, while not presented to the learned District Judge, is squarely raised in this court.

The bill disclosed a situation where all of the defendants were citizens of states other than Pennsylvania, the home of the plaintiff, and therefore it was the appellee's claim that the necessary diversity of citizenship existed to confer jurisdiction upon the federal court.

Defendants contend that the traction company should be aligned with the plaintiff for the purpose of determining whether the federal court has jurisdiction of the action.

In support of their contention, they cite In re Removal Cases, 100 U. S. 457, 25 L. Ed. 593, from which Foster draws the following rule:

"In determining between whom the controversy exists, the court is not bound by the title of the case or the form of the proceedings, but should examine the record, ascertain the matters in dispute, and arrange the parties on opposite sides of the same according to the facts, no matter what their technical place as plaintiffs or defendants may be."

See Foster on Federal Practice, vol. 1, § 40.

One of the tests by which the court may determine whether a defendant should be aligned with the plaintiff is the prayer for relief. If no relief is sought against a defendant, such defendant should ordinarily be treated as a plaintiff. Dawson v. Columbia Avenue Trust Co., 197 U. S. 178, 180, 25 Sup. Ct. 420, 49 L. Ed. 713; Steele v. Culver, 211 U. S. 26, 29, 29 Sup. Ct. 9, 53 L. Ed. 74. Whether we examine the entire bill or merely the prayer for relief, we must reach the same conclusion, viz. that the traction company and the plaintiff are on the same side of this controversy. We fail to find any collision of interest between them. Both are interested in obtaining the same relief.

[2] But it is insisted that, even though the traction company be aligned with the appellee, the court should retain jurisdiction of the suit. For, it is pointed out, the traction company is at best not a necessary party and could be properly dismissed.

In support of this contention that the mortgagor is not a necessary party, the following cases are cited: Carter v. Fortney (C. C.) 170 Fed. 463; same case in the Circuit Court of Appeals, 203 Fed. 454, 121 C. C. A. 514; Knickerbocker Trust Co. v. City of Kalamazoo (C. C.) 182 Fed. 865; City of Denver v. New York Trust Co., 187 Fed. 890, 110 C. C. A. 24; same case in the Supreme Court, 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Mercantile Trust Co. v. Texas & Pacific Co. (C. C.) 51 Fed. 529; Ex parte Haggerty (C. C.) 124 Fed. 441–446; Guardian Trust Co. v. White Cliffs Portland Cement Co. (C. C.) 109 Fed. 523; Old Colony Trust Co. v. City of Wichita (C. C.) 123 Fed. 762; City of Denver v. Mercantile Trust Co., 201 Fed. 790, 120 C. C. A. 100.

Appellants, in support of their claim that the traction company is an indispensable party, cite the following authorities: Dawson v. Columbia Avenue Trust Co., 197 U. S. 177, 25 Sup. Ct. 420, 49 L. Ed. 713; Consolidated Water Co. v. Babcock (C. C.) 76 Fed. 243; Consolidated Water Co. v. City of San Diego (C. C.) 84 Fed. 369; Consolidated Water Co. v. Babcock (C. C.) 76 Fed. 246; Consolidated Water Co. v. City of San Diego, 93 Fed. 849, 35 C. C. A. 631; Williams v. City Bank & Trust Co., 186 Fed. 419, 108 C. C. A. 341; Old Colony Trust Co. v. Atlanta Ry. Co. (C. C.) 100 Fed. 798; Steele v. Culver, 211 U. S. 26, 29 Sup. Ct. 9, 53 L. Ed. 74; McClelland v. McKane (C. C.) 154 Fed. 164; Foster on Federal Practice (5th Ed.) vol. 1, p. 103; Boston Safe Deposit & Trust Co. v. City of Racine (C. C.) 97 Fed. 817.

The right of a mortgagee under certain conditions to bring an injunctional suit to protect its security independently of the mortgagor is thoroughly established. Some of the cases cited above not only recognize such right on the part of the mortgagee but further hold that the mortgagor is an unnecessary party.

Such rule is applied where the suit is brought to restrain threatened injury to the security by trespassers or other tort-feasors, and where the threatened injury is by outsiders, strangers to the affairs and contracts of the mortgagor.

But none of the cases cited hold that such rule applies where the mortgagee instituted a suit based upon a contract of the mortgagor with third parties. Where the plaintiff sought to enjoin the employés from breaking their contract with the traction company, it necessarily was endeavoring to enforce the rights of its mortgagor. Its own rights were derivative of and limited strictly by the rights of the mortgagor. Moreover, in so far as it attempted by this action to fix or determine the rights of the employés under their contract with the traction company, it was embarking upon what was strictly a phase of the traction company's business policy. In such a case the traction company was an indispensable party to the action.

That such company is an indispensable party is clearly shown when we consider the possible, and in fact probable, embarrassment which the courts will meet, if separate actions in respect to this contract can be maintained in different jurisdictions. If this case were to proceed to trial without the traction company and the court upheld the contract and enforced its terms against the defendant employés, its decision would not be binding upon the mortgagor in a subsequent action. If the traction company were not a party to the action it would have a perfect right to test out the same question in the state court. Such a situation should not be tolerated. The mere statement of the possibilities shows the absolute necessity of making the traction company a party to this action.

In any action by the mortgagees to enforce an agreement made and entered into between the traction company and its employés, such latter parties are within their rights in insisting that all parties to the agreement be bound by the decree.

The rule is announced in Consolidated Water Co. v. City of San Diego, 93 Fed. 852, 35 C. C. A. 634, as follows:

"The general rule as to parties, as expressed in many of the authorities, is to the effect that all persons should be made parties to a suit in equity who are directly interested in obtaining or resisting the relief prayed for in the bill or granted in the decree. And in a case like the present, where the trial of the suit would necessarily involve the management and conduct of the affairs, and an adjudication of the rights, of the San Diego Water Company (the mortgagor), it is essentially necessary that it should be made a party to the suit, either as a plaintiff or a defendant."

Applying this rule to the facts in the instant case, it is apparent that the plaintiff's action is predicated upon the efficacy of a contract between the mortgagor and its employés. Such being the case, the transportation company, the mortgagor, is an indispensable party. By

aligning the transportation company with the plaintiff as we are required to do, the necessary diversity of citizenship to give the federal. court jurisdiction is lacking.

The decree is reversed, with directions to dismiss the bill for want of jurisdiction.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes